IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAGUAR PREMIUM FINANCE CORP., ) <br> a Texas corporation ) <br> ) <br>      **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ALL-AMERICAN SHOWS, INC., an Alabama ) <br> Corporation; JOHN T. ("TERRY") ) <br> PORTEMONT, an individual; and THERESA ) <br> PORTEMONT, an individual; ) <br> ) <br>      **Defendants.** ) | CIVIL ACTION NO. <br> 2:07cv1004-MEF |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, *Fed.R.Civ.P.*, and the Uniform Scheduling Order entered in this action, plaintiff Jaguar Premium Finance Corporation ("Jaguar Premium") moves this Court to enter summary judgment in favor of Jaguar Premium and against defendants All-American Shows, Inc., John T. ("Terry") Portemont, and Theresa Portemont, jointly and severally, on the grounds that no genuine issue of material fact exists, and that summary judgment is due to be entered as a matter of law against all defendants and in favor of Jaguar Premium. In support of its motion, Jaguar Premium says as follows:

### Nature of Action

Jaguar Premium filed this action in federal court on the basis of diversity jurisdiction to collect an unpaid debt that is owed to it by All-American Shows, Inc. ("All-American"), as the debtor, and by John T. ("Terry") Portemont ("Terry Portemont"), and Theresa Portemont ("Theresa Portemont"), as guarantors (together, the "Portemonts").

**Narrative Summary**

Jaguar Premium extended credit in June 2006 to All-American to enable it to purchase insurance coverage for its carnival business, and to re-finance the debt of All-American to Jaguar Premium for insurance premium costs for insurance coverage for the prior year. Affidavit of Mitchell H. Kaliff, President of Jaguar Premium at ¶3 (the "Kaliff Affidavit") (Exhibit A, attached hereto and incorporated herein by reference). Specifically, All-American, by and through its President Terry Portemont, executed and delivered to Jaguar Premium that certain Commercial Premium Finance Agreement and Disclosure Statement in the original principal amount of $319,771.10 (the "Finance Agreement"). Kaliff Affidavit, ¶4 and Exhibit 1 (executed copy) and Exhibit 2 (more legible blank form copy). As a result of this extension of credit by Jaguar Premium, All-American retained and maintained insurance coverage for its business for the period April 2006 to April 2007. Kaliff Affidavit, ¶5. All-American defaulted in the payment of the Finance Agreement, and, as a result, the debt was accelerated and all amounts due under the Finance Agreement became due and payable in full. Kaliff Affidavit, ¶6. To date, All-American has failed and refused to pay Jaguar Premium in accordance with the Finance Agreement. Kaliff Affidavit, ¶7.

As a condition to the extension of credit to All-American, Jaguar Premium required that Terry Portemont and Theresa Portemont, guaranty the payment of the debt of All-American to Jaguar Premium. Kaliff Affidavit, ¶8. As a result, Terry Portemont and Theresa Portemont executed and delivered to Jaguar Premium their personal guaranty agreement (the "Guaranty Agreement"). Kaliff Affidavit, ¶9 and Exhibit 3 (executed copy) and Exhibit 4 (more legible blank form copy). Upon demand, Terry Portemont and Theresa Portemont have failed and refused to honor the terms of their Guaranty Agreement. Kaliff Affidavit, ¶10.

As of February 29, 2008, after all due credits, defendants owe Jaguar Premium, jointly and severally, the sum of $165,917.07 ($139,221.91 -- principal; $19,645.16 -- interest; and $7,050 -- late fees) under the Finance Agreement and Guaranty Agreement. Kaliff Affidavit, ¶11. Interest continues to accrue at the rate of $55.61 per day on the debt owed under the Finance Agreement. Kaliff Affidavit, ¶12. The Finance Agreement and Guaranty Agreement provide that defendants shall be responsible for Jaguar Premium's costs of collection, including but not limited to reasonable attorney's fee and expenses. As of February 29, 2008, Jaguar Premium has incurred costs of collection of $7,972 ($7,488 -- attorney's fees; $484 -- expenses). Affidavit of Anne Stone Sumblin, ¶3 and 4 (Exhibit B attached hereto and incorporated herein by reference); and Kaliff Affidavit, ¶13.

**Material Submitted In Support of Motion**

Jaguar Premium submits the following in support of its motion:

1. Complaint;
2. Affidavit of Mitchell H. Kaliff; and
3. Affidavit of Anne Stone Sumblin.

WHEREFORE, PREMISES CONSIDERED, Jaguar Premium prays that this Court will set this motion for hearing in accordance with Rule 56(c), *Fed.R.Civ.P.*, and, after due consideration of the motion and any opposition, will grant summary judgment in favor of Jaguar Premium and against each defendant, jointly and severally, in the amount of $173,889.07, plus additional accrued interest at the rate of $55.61 per day after February 29, 2008, plus additional

costs of collection of $585.00, plus costs. Jaguar Premium prays for such other and further relief that this Court deems appropriate.

          /s/ Anne Stone Sumblin
          Anne Stone Sumblin (SUMBA8358)
          Attorney for Plaintiff

OF COUNSEL:
Walston Wells & Birchall, LLP
Post Office Box 345
Kinston, AL  36453
Telephone: (334) 565-3380
Telecopier: (334) 565-3076
*asumblin@oppcatv.com*

## CERTIFICATE OF SERVICE

     I hereby certify that on this 4th day of March, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will serve notification of such filing on the following:

James R. Clifton, Esq.
Albrittons, Clifton, Alverson, Moody & Bowden, P.C.
109 Opp Avenue
P.O. Drawer 880
Andalusia, AL 36420-0880

          /s/ Anne Stone Sumblin
          Of Counsel

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAGUAR PREMIUM FINANCE CORP.,<br>a Texas corporation<br><br>Plaintiff,<br><br>v.<br><br>ALL-AMERICAN SHOWS, INC., an Alabama Corporation; JOHN T. ("TERRY") PORTEMONT, an individual; and THERESA PORTEMONT, an individual;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  2:07cv1004-MEF<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

STATE OF TEXAS )
)
COUNTY OF Bexar )

### AFFIDAVIT OF MITCHELL H. KALIFF

Before me, the undersigned authority, personally appeared Mitchell H. Kaliff, who upon being duly sworn, deposes and says as follows:

1. My name is Mitchell H. Kaliff. I am a adult resident and citizen of the State of Texas, and I am competent in all respects to provide and execute this affidavit.

2. I am currently the President of Jaguar Premium Finance Corporation ("Jaguar Premium") and I have held this position since _2001_. This affidavit is given in support of the Motion for Summary Judgment of Jaguar Premium to be filed in the above-styled action, and this affidavit, unless otherwise stated, is based upon my personal knowledge and my review of the business records of Jaguar Premium that are created and maintained by Jaguar Premium in course of its regularly conducted business activities and as a regular practice of Jaguar Premium's business activities.

<div style="text-align: right;">**EXHIBIT A - TO MOTION FOR SUMMARY JUDGMENT**</div>

3. Jaguar Premium extended credit in June 2006 to All-American to enable it to purchase insurance coverage for its carnival business, and to re-finance certain debt of All-American owed to Jaguar Premium for insurance coverage for the prior year.

4. All-American, by and through its President Terry Portemont executed and delivered to Jaguar Premium that certain Commercial Premium Finance Agreement and Disclosure Statement in the original principal amount of $319,771.10 (the "Finance Agreement"). A true and correct copy of the Finance Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference. A true and correct copy of a blank but more legible copy of the same Finance Agreement that was signed by Terry Portemont is attached as Exhibit 2 and is incorporated herein by reference.

5. As a result of this extension of credit by Jaguar Premium, All-American retained and maintained insurance coverage for its business for the period April 2006 to April 2007.

6. All-American defaulted in the payment of the Finance Agreement, and, as a result, the debt was accelerated in accordance with the terms of the Finance Agreements and all amounts due under the Finance Agreement became due and payable in full.

7. To date, All-American has failed and refused to pay Jaguar Premium in accordance with the Finance Agreement.

8. As a condition to the extension of credit to All-American, Jaguar Premium required that Terry Portemont and Theresa Portemont, guaranty the payment of the debt of All-American to Jaguar Premium.

9. Terry Portemont and Theresa Portemont executed and delivered to Jaguar Premium their personal guaranty agreement (the "Guaranty Agreement"). A true and correct copy of the Guaranty Agreement is attached hereto as Exhibit 3 and is incorporated herein by

reference. A true and correct copy of a blank but more legible copy of the same Guaranty Agreement that was signed by the Portemonts is attached as Exhibit 4 and is incorporated herein by reference.

10. Upon demand, Terry Portemont and Theresa Portemont have failed and refused to honor the terms of their Guaranty Agreement.

11. As of February 29, 2008, after all due credits, defendants owe Jaguar Premium, jointly and severally, the sum of $165,917.07 ($139,221.91-principal; $_____ ($19,645.16-interest; and $7,050-late fees) under the Finance Agreement.

12. Interest continues to accrue at the rate of $55.61 per day on the debt owed under the Finance Agreement.

13. Jaguar Premium retained Anne S. Sumblin of Walston Wells & Birchall, LLP, to represent it in connection with the enforcement of the terms of the Finance Agreement and Guaranty Agreement and with the collection of the debt owed by defendants to Jaguar Premium.

_____
Mitchell H. Kaliff

SWORN TO and SUBSCRIBED before me on this the 29 day of February, 2008.

_____
Notary Public

My Commission Expires: 6/19/2008

SEAL



MARY HELEN GARCIA
Notary Public, State of Texas
My Commission Expires
June 19, 2008

3

RECEIVED 06-29-06 11:08   FROM-   TO- Kaliff Insurance   P002/006

## COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT PAGE 1 OF 2

5085 N. New Braunfels
San Antonio, TX 78209

| | INSURED/BORROWER (Name and Address as Shown on Policy) |
|---|---|
| | John T. & Theresa Portemont |
| | All American Shows, Inc. |
| | P.O. Box 1577 |
| | Andalusia, AL 36420 |

| | AGENT or BROKER (Name and Business Address) |
|---|---|
| | Kaliff Insurance |
| | P.O. Box 171225 |
| | San Antonio, TX 78217 |

| | | |
|---|---|---|
| A | Total Premiums | $319,771.10 |
| B | Cash Down Payment Required | $0.00 |
| C | Unpaid Premium Balance | $319,771.10 |
| D | Documentary Stamp Tax | $0.00 |
| E | Amount Financed (The amount of credit provided on your behalf) | $319,771.10 |
| F | FINANCE CHARGE (Dollar amount credit will cost you) | $25,409.61 |
| G | Total of Payments (Amount you will have paid after making all scheduled payments) | $345,180.71 |
| | ANNUAL PERCENTAGE RATE (Cost of your credit figured as a yearly rate) | 14.00% |

**Prepayment:** The insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

☒ PAYMENT SCHEDULE BELOW
☐ See Attached Schedule

| Number of Payments | Payments are Due Two Monthly Beginning | Amount of Each Payment |
|---|---|---|
| 24 | 07/05/2006 | $14,000.00 |
| 1 | 07/05/2007 | $9,180.71 |

**Security:** As security for the payments to be made, the insured assigns JAGUAR PREMIUM FINANCE CORP. (herein referred to as "JAGUAR") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, JAGUAR HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement.

**Contract Reference:** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment.

**Late Payment:** A late charge will be imposed on any payment which is not received by JAGUAR within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by JAGUAR within such grace period). This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, ND, and NM.

### SCHEDULE OF POLICIES

| POLICY NUMBER AND PREFIX | FULL NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL AGENT OR COMPANY OFFICE TO WHICH PREMIUM IS PAID | TYPE OF INSURANCE | POLICY TERM IN MONTHS | EFFECTIVE DATE MO/DAY/YR | POLICY PREMIUMS |
|---|---|---|---|---|---|
| AR5360008 | COLONY NATIONAL INS CO | GL | 12 | 04/19/2006 | $48,370.00 |
| AB100010 | ARGONAUT MIDWEST INS CO | AUTO | 12 | 04/19/2006 | $86,439.15 |
| AR4200202 | COLONY NATIONAL INS CO | IM | 12 | 04/19/2006 | $29,495.40 |
| PREV BALANCE | PREVIOUS POLICIES BALANCE | | | | $155,466.55 |

**NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION**
The provisions on page 2 are incorporated by reference and constitute a part of this agreement.

| TOTAL PREMIUMS (Record in "A") | $319,771.10 |
|---|---|

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties noted therein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, court costs, and other collection costs incurred by JAGUAR in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify JAGUAR for any and all losses JAGUAR incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

*Mitchell H. Kaliff*
Signature of Agent or Broker

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by JAGUAR, the named insured (herein referred to as Insured") promises to pay, to the order of JAGUAR, the Total of Payments subject to all of the provisions set forth on both pages of this agreement.

**NOTICE TO INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement. (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the service charge. (4) Keep your copy of this agreement to protect your legal rights.

Date 6-29-06

John T. & Theresa Portemont
Name of Insured (Print or Type)

*[signature]*
By: Signature

**KALIFF AFFIDAVIT, EXHIBIT 1**
**(2:07cv1004-MEF)**

FROM :   FAX NO. :   Jun. 29 2006 12:10PM P2



RECEIVED 06-29-'06 11:08 FROM- TO- Kallff Insurance P003/006

# ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT: PAGE 2 OF 2

**INSURED:** John T. & Theresa Porte .nt **EFFECTIVE:** 04/19/2006 **PREMIUMS:** $319,771.10

WARRANTY OF ACCURACY. The insured represents and warrants to JAGUAR that the insurance policies listed in the Schedule of Policies are in full force and effect and that the insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The insured further represents and warrants to JAGUAR that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the insured has no indebtedness to the insurers issuing the listed policies, and none of those insurers have asserted any claims for payment against the insured.

REPRESENTATION OF SOLVENCY. The insured represents that the insured is not insolvent nor presently the subject of any insolvency proceeding.

COLLATERAL. To secure payment of all amounts due under this agreement, insured grants JAGUAR a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest.

RIGHT TO CANCEL. If insured does not make a payment when it is due, or if insured is otherwise in default under this agreement, JAGUAR may cancel the policies and act in insured's place with regard to the policies, including endorsing any check or draft issued in the insured's name for funds assigned to JAGUAR as security herein. This right given by insured to JAGUAR constitutes a "Power of Attorney". Before JAGUAR cancels the policies, JAGUAR will provide notice to the insured, as required by law. Insured agrees that the right to cancel which insured has granted to JAGUAR cannot be revoked, and that JAGUAR'S right to cancel will terminate only after all of insured's indebtedness under this agreement is paid in full.

DEFAULT. Insured is in default under this agreement if, (a) a payment is not received by JAGUAR when it is due, (b) insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) insured fails to comply with any of the terms of this agreement, (d) insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and insured fails to pay such increased premiums within sixty (60) days of notification, or (f) insured is in default under any other agreement with JAGUAR. Whenever the word "default" is used in this agreement, it means any one of the above. If the insured is in default, JAGUAR has no further obligation under this agreement to pay premiums on the insured's behalf, and JAGUAR may pursue any of the remedies provided in this agreement.

LATE CHARGES. A late charge will be imposed on any payment which is not received by JAGUAR within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by JAGUAR within such grace period). This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $0.00 in CA, MT, NC, and MA.

DISHONORED CHECK FEE. If an insured's check is dishonored for any reason and if permitted by law, the insured will pay JAGUAR a dishonored check fee equal to the maximum fee permitted by law.

PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION. Once a Notice of Cancellation has been sent to any insurance company, JAGUAR has no duty to rescind it or to ask that the policy be reinstated, even if JAGUAR later receives insured's payment. Payments which JAGUAR receives after sending a Notice of Cancellation may be applied to insured's account without changing any of JAGUAR's rights under this agreement.

JAGUAR'S RIGHTS AFTER THE POLICIES ARE CANCELLED. After any policy is cancelled (whether by insured or JAGUAR or anyone else) JAGUAR has the right to receive all unearned premiums and other funds assigned to JAGUAR as security herein and to apply them to insured's unpaid balance under this agreement or any other agreement between the insured and JAGUAR. If the amount received is more than the amount owed by insured, any excess amount will be refunded to insured. If the amount received is less than the amount owed by insured, insured will pay JAGUAR the balance due. JAGUAR may act in insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever JAGUAR tells them regarding the policies; it does not have to get any proof from the insured or anyone else.

INTEREST DUE AFTER CANCELLATION. To the extent permitted by applicable law, if cancellation occurs, the insured agrees to pay JAGUAR interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL. At any time after default, JAGUAR can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if JAGUAR has not received any refund of unearned premium.

CANCELLATION CHARGE. If a default by the insured results in cancellation of any insurance policy listed in the Schedule of Policies, the insured will pay JAGUAR a cancellation charge equal to the maximum charge permitted by law.

ASSIGNMENTS. Insured may not assign any policy without JAGUAR'S written consent. However, JAGUAR's consent is not needed to add mortgagees or other persons as loss payees. JAGUAR may transfer its rights under this agreement to anyone without the consent of insured.

COLLECTIONS AND ATTORNEY FEES. JAGUAR may enforce its rights to collect amounts due to it without using the security interest granted in this agreement. If JAGUAR uses an attorney who is not a salaried employee of JAGUAR or incurs other collection costs to collect any money owed under this agreement, then to the extent permitted by applicable law, insured agrees to pay reasonable attorney fees, court costs, and other collection costs incurred by JAGUAR.

PREPAYMENT. At any time, insured may pay the entire amount still unpaid. If insured pays the full unpaid amount before it is due, insured will receive a refund of unearned Finance Charge computed by the actuarial method or the Rule of 78's, as permitted by applicable law. The refund will be subject to the maximum nonrefundable service fee permitted by applicable law. There is no refund made if the amount to be refunded is less than $1.00.

AUDIT AND REPORTING FORM POLICIES. With regard to any policy in the Schedule of Policies which is an auditable or reporting form type, insured agrees to promptly pay to the insurance company the difference between the actual earned premium generated for the policy, and the premiums financed under this agreement.

FINANCE CHARGE. The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest and may include a non-refundable service fee equal to the maximum fee permitted by applicable law. The finance charge is computed using 365 day year.

AGENT OR BROKER. The agent or broker handling this agreement is not the agent or broker of JAGUAR, and cannot legally bind JAGUAR in any way.

CORRECTIONS. JAGUAR may insert the names of the insurance companies and policy numbers, if these are not known at the time insured signs this agreement. JAGUAR is authorized to correct patent errors or omissions in this agreement.

EFFECTIVE DATE. This agreement will not become effective until it is accepted in writing by JAGUAR. GOVERNING LAW. This agreement is governed by and interpreted under the laws of the state where JAGUAR accepts this agreement. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning.

SIGNATURE AND ACKNOWLEDGEMENT. Insured has signed this agreement and received a copy of it. If insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the insured is not a corporation, all insureds listed in any policy have signed.

LIABILITY. Insured understands and agrees that JAGUAR has no liability to insured or any person or entity upon the exercise of JAGUAR's right of cancellation, except in the event of willful or intentional misconduct by JAGUAR.

## AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

SIGNATURES GENUINE. To the best of our knowledge, the insured's signature is genuine.

AUTHORIZATION/RECOGNITION. The insured has authorized this transaction. Both the insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the insured assigns to FIRST all unearned premium, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.

POLICIES EFFECTIVE/PREMIUMS CORRECT. The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed.

INSURED HAS THIS DOCUMENT. The insured has been given a copy of this agreement.

NO INSOLVENCY. To the best of our knowledge, neither the insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

DEPOSIT/PROVISIONAL PREMIUMS. Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

LOSS PAYEES NAMED. Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (c). The Agent/Broker has notified the relevant insurance companies and the insured that FIRST is to be named as a loss payee on any such policies.

AUTHORIZED ISSUING AGENT. For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of issuing Agent or General Agent is listed in the Schedule of Policies.

AMOUNTS DUE FROM INSURED. The cash down payment and any installments due from the insured have been collected from the insured.

### FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

| | | Policy Number of Exceptions | Comments |
|---|---|---|---|
| (a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right | (a) | | |
| (b) No policies are subject to Minimum Earned Premium except policies listed at right The Minimum Earned Premium for listed policies is $______. | (b) | | |
| (c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right | (c) | | |
| (d) No policies contain provisions which prohibit cancellation either by the insured or by the insurance company within ten (10) days, except those policies listed at right | (d) | | |

JPFC Form 1 (03/2006)

**COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT PAGE 1 OF 2**

| | | |
|---|---|---|
| INSURED/BORROWER (Name and Address as Shown on Policy)<br><br>John T. & Theresa Portemont<br>All American Shows, Inc.<br>P.O. Box 1577<br>Andalusia, AL 36420 | A | Total Premiums | $319,771.10 |
| | B | Cash Down Payment Required | $0.00 |
| | C | Unpaid Premium Balance | $319,771.10 |
| | D | Documentary Stamp Tax | $0.00 |
| | E | Amount Financed (The amount of credit provided on your behalf) | $319,771.10 |
| AGENT or BROKER (Name and Business Address)<br><br>Kaliff Insurance<br>P.O. Box 171225<br>San Antonio, Tx 78217 | F | FINANCE CHARGE (Dollar amount credit will cost you) | $25,409.61 |
| | G | Total of Payments (Amount you will have paid after making all scheduled payments) | $345,180.71 |
| | | ANNUAL PERCENTAGE RATE (Cost of your credit figured as a yearly rate) | 14.00% |

**Prepayment:** The insured may prepay the full amount due and receive a refund of the unearned interest as provided on page 2 of this agreement.

☒ PAYMENT SCHEDULE BELOW
☒ See Attached Schedule

**Security:** As security for the payments to be made, the insured assigns JAGUAR PREMIUM FINANCE CORP. (herein referred to as "JAGUAR") a security interest in return premiums, dividend payments, and certain loss payments with reference to the policies listed below. Under certain conditions, JAGUAR HAS THE RIGHT TO CANCEL FINANCED POLICIES, as provided on page 2 of this agreement

**Contract Reference:** Reference should be made to the terms of this agreement as stated below and on page 2 for information about nonpayment, default, cancellation, the right to demand immediate payment in full, and prepayment

| Number Of Payments | Payments are Due Twice Monthly Beginning | Amount of Each Payment |
|---|---|---|
| 24 | 07/05/2006 | $14,000.00 |
| 1 | 07/05/2007 | $9,180.71 |

**Late Payment:** A late charge will be imposed on any payment which is not received by JAGUAR within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by JAGUAR within such grace period). This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, ND, and NM.

**SCHEDULE OF POLICIES**

| POLICY NUMBER AND PREFIX | FULL NAME OF INSURANCE COMPANY AND NAME AND ADDRESS OF GENERAL AGENT OR COMPANY OFFICE TO WHICH PREMIUM IS PAID | TYPE OF INSURANCE | POLICY TERM IN MONTHS | EFFECTIVE DATE MO/DAY/YR | POLICY PREMIUMS |
|---|---|---|---|---|---|
| AR5360008 | COLONY NATIONAL INS CO | GL | 12 | 04/19/2006 | $48,370.00 |
| AB100010 | ARGONAUT MIDWEST INS CO | AUTO | 12 | 04/19/2006 | $86,439.15 |
| AR4200202 | COLONY NATIONAL INS CO | IM | 12 | 04/19/2006 | $29,495.40 |
| PREV BALANCE | PREVIOUS POLICIES BALANCE | | | | $155,466.55 |

NOTICE: SEE PAGE 2 FOR IMPORTANT INFORMATION
The provisions on page 2 are incorporated by reference and constitute a part of this agreement.

TOTAL PREMIUMS (Record in "A") $319,771.10

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**
The undersigned agent or broker has read the Agent/Broker Representations and Warranties on page 2, has completed page 2 of all copies where required, and makes all such Representations and Warranties recited therein. Further, the undersigned agent or broker agrees to: (i) pay all reasonable attorney fees, court costs, and other collection costs incurred by JAGUAR in recovering amounts due from the agent or broker in connection with any breach of the Agent/Broker Representations and Warranties, and (ii) indemnify JAGUAR for any and all losses JAGUAR incurs as a result of any error committed by the Agent/Broker in completing or failing to complete any portion of this agreement.

Signature of Agent or Broker

**INSURED'S AGREEMENT:**
In consideration of the premium payments (the "Amount Financed" above) to be made to the above captioned AGENT or BROKER by JAGUAR, the named insured (herein referred to as insured") promises to pay, to the order of JAGUAR, the Total of Payments subject to all of the provisions set forth on both pages of this agreement

**NOTICE TO INSURED:**
(1) Do not sign this agreement before you read both pages of it, or if it contains blank spaces. (2) You are entitled to a completely filled-in copy of this agreement, (3) Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of By" the service charge. (4) Keep your copy of this agreement to protect your legal rights.

Date _____

John T. & Theresa Portemont
Name of Insured (Print or Type)

By: Signature _____

**KALIFF AFFIDAVIT, EXHIBIT 2**
**(2:07cv1004-MEF)**

## ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT: PAGE 2 OF 2

INSURED: John T. & Theresa Portemont     EFFECTIVE: 04/19/2006     PREMIUMS: $319,771.10

**WARRANTY OF ACCURACY.** The Insured represents and warrants to JAGUAR that the insurance policies listed in the Schedule of Policies are in full force and effect and that (he Insured has not assigned any interest in the policies except for the interest of mortgagees and loss payees. The Insured further represents and warrants to JAGUAR that: (i) none of the insurance policies listed in the Schedule of Policies are for personal, family or household purposes, and (ii) the Insured has no indebtedness to the insurers issuing the listed policies, and none of those insurers have asserted any claims for payment against the Insured.

**REPRESENTATION OF SOLVENCY.** The Insured represents that the insured is not insolvent nor presently the subject of any insolvency proceeding.

**COLLATERAL.** To secure payment of all amounts due under this agreement, Insured grants JAGUAR a security interest in the policies, including all return premiums, dividend payments, and loss payments which reduce unearned premiums, subject to any mortgagee or loss payee interest.

**RIGHT TO CANCEL.** If Insured does not make a payment when it is due, or if Insured is otherwise in default under this agreement, JAGUAR may cancel the policies and act in Insured's place with regard to the policies, including endorsing any check or draft issued in the Insured's name for funds assigned to JAGUAR as security herein. This right given by Insured to JAGUAR constitutes a "Power of Attorney". Before JAGUAR cancels the policies, JAGUAR will provide notice to the Insured, as required by law. Insured agrees that this right to cancel which Insured has granted to JAGUAR cannot be revoked, and that JAGUAR's right to cancel will terminate only after all of Insured's indebtedness under this agreement is paid in full.

**DEFAULT.** Insured is in default under this agreement if, (a) a payment is not received by JAGUAR when it is due, (b) Insured or its insurance companies are insolvent or involved in a bankruptcy or similar proceeding as a debtor, (c) Insured fails to comply with any of the terms of this agreement, (d) Insurance companies cancel coverages, (e) premiums increase under any policy listed in this agreement, and Insured fails to pay such increased premium within thirty (30) days of notification, or (f) Insured is in default under any other agreement with JAGUAR. Wherever the word "default" is used in this agreement, it means any one of the above. If the Insured is in default, JAGUAR has no further obligation under this agreement to pay premiums on the Insured's behalf, and JAGUAR may pursue any of the remedies provided in this agreement.

**LATE CHARGES.** A late charge will be imposed on any payment which is not received by JAGUAR within five (5) days of its due date (unless a longer grace period is specified under applicable law, in which case a late charge will be imposed on any payment not received by JAGUAR within such grace period). This late charge will be 5% of the overdue amount or the maximum late charge permitted by applicable law, whichever is less. The maximum late charge is $5.00 in DE, MT, NO, and MM.

**DISHONORED CHECK FEE.** If an Insured's check is dishonored for any reason and it permitted by law, the Insured will pay JAGUAR a dishonored check fee equal to the maximum Fee permitted by law.

**PAYMENTS RECEIVED AFTER NOTICE OF CANCELLATION.** Once a Notice of Cancellation has been sent to any insurance company, JAGUAR has no duty to rescind it or to ask that the policy be reinstated, even if JAGUAR later receives Insured's payment. Payments which JAGUAR receives after sending a Notice of Cancellation may be applied to Insured's account without changing any of JAGUAR's rights under this agreement.

**JAGUAR'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any policy is cancelled (whether by Insured or JAGUAR or anyone else) JAGUAR has the right to receive all unearned premiums and other funds assigned to JAGUAR as security herein and to apply them to Insured's unpaid balance under this agreement or any other agreement between the Insured and JAGUAR. If the amount received is more than the amount owed by Insured, any excess amount will be refunded to Insured. If the amount received is less than the amount owed by Insured, Insured will pay JAGUAR the balance due. JAGUAR may act in Insured's place to do whatever is necessary to collect such refunds. The insurance companies may rely on whatever JAGUAR tells them regarding the policies; it does not have to get any proof from the Insured or anyone else.

**INTEREST DUE AFTER CANCELLATION.** To the extent permitted by applicable law, if cancellation occurs, the Insured agrees to pay JAGUAR interest on the balance due at the contract rate or at the maximum rate allowed by applicable law, whichever is less, until the balance is paid in full or until such other date as provided by applicable law.

**RIGHT TO DEMAND IMMEDIATE PAYMENT IN FULL.** At any time after default, JAGUAR can demand and has the right to receive immediate payment of the total unpaid amount due under this agreement even if JAGUAR has not received any refund of unearned premium.

**CANCELLATION CHARGE.** If a default by the Insured results in cancellation of any insurance policy listed in the Schedule of Policies, the Insured will pay JAGUAR a cancellation charge equal to the maximum charge permitted by law.

**ASSIGNMENTS.** Insured may not assign any policy without JAGUAR's written consent. However, JAGUAR's consent is not needed to add mortgagees or other persons as loss payees. JAGUAR may transfer its rights under this agreement to anyone without the consent of Insured.

**COLLECTIONS AND ATTORNEY FEES.** JAGUAR may enforce its rights to collect amounts due to it using the security interest granted in this agreement. If JAGUAR uses an attorney who is not a salaried employee of JAGUAR or incurs other collection costs to collect any money owed under this agreement, then to the extent permitted by applicable law, Insured agrees* pay reasonable attorney fees, court costs, and other collection costs incurred by JAGUAR.

**PREPAYMENT.** At any time, Insured may pay the entire amount still unpaid. If Insured pays the fun unpaid amount before it is due, Insured will receive a refund of unearned Finance Charge computed by the actuarial method or the Rule of 78's, as permitted by applicable law. The refund will be subject to the maximum non-refundable service fee permitted by applicable law. There is no refund made if the amount to be refunded is less than $1.00.

**AUDIT AND REPORTING FORM POLICIES.** With regard to any policy in the Schedule of Policies which is an auditable or reporting form type, Insured agrees to promptly pay to the insurance company the difference between the actual earned premium generated for the policy, and the premiums financed under this agreement.

**FINANCE CHARGE.** The finance charge begins on the earliest effective date of the policies listed in the Schedule of Policies section. The finance charge includes interest and may include a non-refundable service fee equal to the maximum fee permitted by applicable law. The finance charge is computed using 365 day year.

**AGENT OR BROKER.** The agent or broker handling this agreement is not the agent or broker of JAGUAR, and cannot legally bind JAGUAR in any way.

**CORRECTIONS.** JAGUAR may insert the names of the insurance companies and policy numbers, if these are not known at the time Insured signs this agreement. JAGUAR is authorized to correct patent errors or omissions in this agreement.

**EFFECTIVE DATE.** This agreement will not become effective until it is accepted in writing by JAGUAR. **GOVERNING LAW.** This agreement is governed by and interpreted under the laws of the state where JAGUAR accepts this agreement. If any court finds any part of this agreement to be invalid, such finding shall not affect the remainder of this agreement. Singular words in this agreement shall mean plural and vice versa as may be required to give the agreement meaning.

**SIGNATURE AND ACKNOWLEDGEMENT.** Insured has signed this agreement and received a copy of it. If Insured is a corporation, the person signing is an officer of that corporation authorized to sign this agreement. If the Insured is not a corporation, all Insureds listed in any policy have signed.

**LIABILITY.** Insured understands and agrees that JAGUAR has no liability to Insured or any person or entity upon the exercise of JAGUAR's right of cancellation, except in the event of willful or intentional misconduct by JAGUAR.

### AGENT OR BROKER REPRESENTATIONS AND WARRANTIES

**SIGNATURES GENUINE.** To the best of our knowledge, the Insured's signature is genuine.

**AUTHORIZATION/RECOGNITION.** The Insured has authorized this transaction. Both the Insured and the Agent/Broker recognize the security interest granted herein, pursuant to which the Insured assigns to FIRST all unearned premium, dividends and certain loss payments. Upon cancellation of any of the policies listed in the Schedule of Policies, the Agent/Broker agrees to immediately pay FIRST all unearned commissions and all unearned premiums, dividends and loss payments received. If such funds are not remitted to FIRST within 10 days of receipt by the Agent/Broker, the Agent/Broker agrees to pay FIRST interest on such funds at the maximum rate allowed by applicable law.

**POLICIES EFFECTIVE/PREMIUMS CORRECT.** The policies listed in the Schedule of Policies are in full force and effect, and the premiums are correct as listed.

**INSURED HAS THIS DOCUMENT.** The Insured has been given a copy of this agreement.

**NO INSOLVENCY.** To the best of our knowledge, neither the Insured nor the insurance companies are insolvent or involved in a bankruptcy or similar proceeding as debtor, except as clearly indicated on page 1 of this agreement.

**DEPOSIT/PROVISIONAL PREMIUMS.** Any Audit or Reporting Form policies or policies subject to retrospective rating included in this agreement are noted below in section (a). The deposit or provisional premiums for these policies are not less than the anticipated premiums to be earned for the full term of the policies.

**LOSS PAYEES NAMED.** Any policies which provide that the premium may be earned earlier in the event of loss are noted below in section (b) and/or (cV The Agent/Broker has notified the relevant insurance companies and the Insured that FIRST is to be named as a loss payee on any such policies.

**AUTHORIZED ISSUING AGENT.** For the scheduled policies, the Agent/Broker is either the insurance company's authorized policy issuing agent or the broker placing the coverage directly with the insurance company, except where the name and address of Issuing Agent or General Agent is listed in the Schedule of Policies.

**AMOUNTS DUE FROM INSURED.** The cash down payment and any installments due from the Insured have been collected from the Insured.

FOR THE SCHEDULED POLICIES, AGENT OR BROKER WARRANTS THAT:

(a) No policies are Auditable, Reporting Form policies or policies subject to Retrospective Rating, except policies listed at right    (a)

(b) No policies are subject to Minimum Earned Premium except policies listed at right The Minimum Earned Premium for listed policies is $ _____    (b)

(c) All policies provide that unearned premiums are computed by the standard short rate or pro rata table, except those policies listed at right    (c)

(d) No policies contain provisions which prohibit cancellation either by the Insured or by the Insurance company within ten (10) days, except those policies listed at right    (d)

Policy Number of Exceptions      Comments

JPFC Form 1 (03/2004)

RECEIVED 06-29-'06 11:08    FROM-    TO-    Kaliff Insurance    P005/006



### PERSONAL GUARANTY

RE: COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

| | |
|---|---|
| NAME | John T. & Theresa Poriamont |
| ADDRESS | P.O. Box 1677 |
| CITY STATE | Andalusia, AL 36420 |
| ACCOUNT'S | All American Shows, Inc. |
| ACCOUNT NUMBERS | 000492 |

To: JAGUAR PREMIUM FINANCE CORP.
6338 N. New Braunfels
San Antonio, TX 78209

Reference is made to Commercial Premium Finance Agreement and Disclosure Statement ("the Agreement"), between ____ALL AMERICAN SHOWS, INC.____ (the "Borrower"), and Jaguar Premium Financing Corp. ("Jaguar"). Terms not otherwise defined herein shall have the meanings assigned to them in the Agreement.

As an inducement for and in consideration of Jaguar extending financial accommodations to the Borrower whether pursuant to the Agreement or otherwise, the undersigned hereby unconditionally (a) guarantees and agrees to be liable for full and indefeasible payment and performance when due of all now and existing and future Obligations of the Borrower to Jaguar, whether absolute or contingent, however acquired by Jaguar, and whether arising under the Agreement or by operation of law or otherwise, and (b) to pay Jaguar on demand the amount of all expenses (including, without limitation, reasonable attorneys' and paralegals' fees) incurred by Jaguar in collecting or attempting to collect the Borrower's Obligations to Jaguar whether from the Borrower or other sources (all of which are called the "Guaranteed Obligations"). The existing obligations on the date this Personal Guaranty is executed total $319,771.10_____, this amount is not limited nor restricted by the borrower's future obligations.

Notice of acceptance of this Guaranty, the making of loans and extension of credit to the Borrower, and presentment, demand, protest, notice of protest, notice of nonpayment and all other notices to which the Borrower or the undersigned are entitled are hereby waived. The undersigned also waives notice of changes in terms of the extension of time of payment, the taking and releasing of collateral or guarantees (including the release of any of the undersigned) and the settlement, compromise or release of any Guaranteed Obligations and agree that, as to the undersigned, the amount of the Guaranteed Obligations shall not be diminished by any of the foregoing. This is a guaranty of payment and not of collection. Accordingly the undersigned agrees that Jaguar need not attempt to collect any Guaranteed Obligations from the Borrower or other obligors or to realize upon any collateral, but may require the undersigned to make immediate payment of Guaranteed Obligations to Jaguar when due or at any time thereafter.

This Guaranty is absolute, unconditional and continuing. Payment by the undersigned shall be made to Jaguar at Jaguar's office from time to time on demand as Guaranteed Obligations become due, and one or more successive or concurrent actions may be brought hereon against the undersigned either in the same action in which the Borrower is sued or in separate actions. In the event any claim or action, or action on any judgment, based on this Guaranty, is made or brought against the undersigned, the undersigned agrees not to deduct, set-off, or seek to counterclaim for or recoup any amounts which are or may be owed by Jaguar to the undersigned. In case of the death, liquidation, insolvency or bankruptcy of said Borrower, all of said indebtedness, liabilities and obligations, to the extent of the amount of this guaranty, shall, at the option of said Jaguar, become immediately due from and forthwith paid by the undersigned to said Jaguar, the same as though said debts, liabilities and obligations had matured by lapse of time. In the event of the termination of this guaranty by death or dissolution of either or any of the undersigned, this guaranty shall, notwithstanding, still continue and remain in full force against the survivor(s) of the undersigned.

All funds at any time to the credit of the undersigned and any property of the undersigned on which Jaguar at any time have a lien or security interest or of which Jaguar at any time have possession, shall secure payment and performance of all Guaranteed Obligations and all other obligations of the undersigned to Jaguar however arising. The undersigned shall have no right to subrogation, indemnification or recourse to any Guaranteed Obligations or collateral or guarantees therefore or to any assets of the Borrower.

Jaguar's books and records showing the account between Jaguar and the Borrower shall be admissible as evidence in any action or proceeding as prima facie proof of the items therein set forth; and Jaguar's monthly statements rendered to the Borrower to the extent to which no written objection is made within thirty days after

**KALIFF AFFIDAVIT, EXHIBIT 3**
**(2:07cv1004-MEF)**

FROM :    FAX NO. :    Jun. 29 2006 12:11PM   P5

RECEIVED 06-29-'06 11:08  FROM-  TO- Kaliff Insurance  P006/006



date thereof, shall constitute an account stated between Jaguar and the Borrower and be binding on the undersigned.

This Guaranty shall be binding upon the undersigned and his heirs, administrators, executors, successors and assigns and shall benefit Jaguar and Jaguar's successors and assigns.

The undersigned hereby authorizes irrevocably any attorney of any court of record to appear for the undersigned, in such time and from time to time after payment is due hereunder, and confess a judgment without process in favor of Jaguar of such amount of the Guaranteed Obligations as may appear unpaid, together with costs of suit and attorneys' fees and to release and waive all errors that may intervene and to consent to immediate execution thereon.

THIS INSTRUMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICT OF LAW. THE UNDERSIGNED CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN SAN ANTONIO, TEXAS FOR ALL PURPOSES IN CONNECTION WITH THIS GUARANTY. THE UNDERSIGNED WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED ON THIS GUARANTY.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Guaranty as of this 29 day of JUNE, 2006.

_____
JOHN T. PORTEMONT, Individually

_____
THERESA PORTEMONT, Individually

FROM :  FAX NO. :  Jun. 29 2006 12:12PM  P6



6338 N. New Braunfels
San Antonio, TX 78209

### PERSONAL GUARANTY

RE: COMMERCIAL PREMIUM FINANCE AGREEMENT AND DISCLOSURE STATEMENT

| | |
|---|---|
| NAME | John T. & Theresa Portemont |
| ADDRESS | P.O. Box 1577 |
| CITY STATE | Andalusia, AL 36420 |
| ACCOUNT'S | All American Shows, Inc |
| ACCOUNT NUMBERS | 000692 |

To: JAGUAR PREMIUM FINANCE CORP.
6338 N. New Braunfels
San Antonio, TX 78209

Reference is made to Commercial Premium Finance Agreement and Disclosure Statement ("the Agreement"), between \_\_\_\_\_ALL AMERICAN SHOWS, INC.\_\_\_\_\_ (the "Borrower"), and Jaguar Premium Financing Corp. ("Jaguar"). Terms not otherwise defined herein shall have the meanings assigned to them in the Agreement.

As an inducement for and in consideration of Jaguar extending financial accommodations to the Borrower whether pursuant to the Agreement or otherwise, the undersigned hereby unconditionally (a) guarantees and agrees to be liable for full and indefeasible payment and performance when due of all now and existing and future Obligations of the Borrower to Jaguar, whether absolute or contingent, however acquired by Jaguar, and whether arising under the Agreement or by operation of law or otherwise, and (b) to pay Jaguar on demand the amount of all expenses (including, without limitation, reasonable attorneys' and paralegals' fees) incurred by Jaguar in collecting or attempting to collect the Borrower's Obligations to Jaguar whether from the Borrower or other sources (all of which are called the "Guaranteed Obligations"). The existing obligations on the date this Personal Guaranty is executed total $319,771.10\_\_\_\_\_, this amount is not limited nor restricted by the borrower's future obligations.

Notice of acceptance of this Guaranty, the making of loans and extension of credit to the Borrower, and presentment, demand, protest, notice of protest, notice of nonpayment and all other notices to which the Borrower or the undersigned are entitled are hereby waived. The undersigned also waives notice of changes in terms of the extension of time of payment, the taking and releasing of collateral or guarantees (including the release of any of the undersigned) and the settlement, compromise or release of any Guaranteed Obligations and agree that, as to the undersigned, the amount of the Guaranteed Obligations shall not be diminished by any of the foregoing. This is a guaranty of payment and not of collection. Accordingly the undersigned agrees that Jaguar need not attempt to collect any Guaranteed Obligations from the Borrower or other obligors or to realize upon any collateral, but may require the undersigned to make immediate payment of Guaranteed Obligations to Jaguar when due or at any time thereafter.

This Guaranty is absolute, unconditional and continuing. Payment by the undersigned shall be made to Jaguar at Jaguar's office from time to time on demand as Guaranteed Obligations become due, and one or more successive or concurrent actions may be brought hereon against the undersigned either in the same action in which the Borrower is sued or in separate actions. In the event any claim or action, or action on any judgment, based on this Guaranty, is made or brought against the undersigned, the undersigned agrees not to deduct, set-off, or seek to counterclaim for or recoup any amounts which are or may be owed by Jaguar to the undersigned. In case of the death, liquidation, insolvency or bankruptcy of said Borrower, all of said indebtedness, liabilities and obligations, to the extent of the amount of this guaranty, shall, at the option of said Jaguar, become immediately due from and forthwith paid by the undersigned to said Jaguar, the same as though said debts, liabilities and obligations had matured by lapse of time. In the event of the termination of this guaranty by death or dissolution of either or any of the undersigned, this guaranty shall, notwithstanding, still continue and remain in full force against the survivor(s) of the undersigned.

All sums at any time to the credit of the undersigned and any property of the undersigned on which Jaguar at any time have a lien or security interest or of which Jaguar at any time have possession, shall secure payment and performance of all Guaranteed Obligations and all other obligations of the undersigned to Jaguar however arising. The undersigned shall have no right to subrogation, indemnification or recourse to any Guaranteed Obligations or collateral or guarantees therefore or to any assets of the Borrower.

Jaguar's books and records showing the account between Jaguar and the Borrower shall be admissible as evidence in any action or proceeding as prima facie proof of the items therein set forth; and Jaguar's monthly statements rendered to the Borrower to the extent to which no written objection is made within thirty days after

**KALIFF AFFIDAVIT, EXHIBIT 4**
**(2:07cv1004-MEF)**


8338 N. New Braunfels
San Antonio, TX 78209

date thereof, shall constitute an account stated between Jaguar and the Borrower and be binding on the undersigned.

This Guaranty shall be binding upon the undersigned and his heirs, administrators, executors, successors and assigns and shall benefit Jaguar and Jaguar's successors and assigns.

The undersigned hereby authorizes irrevocably any attorney of any court of record to appear for the undersigned, in such time and from time to time after payment is due hereunder, and confess a judgment without process in favor of Jaguar of such amount of the Guaranteed Obligations as may appear unpaid, together with costs of suit and attorneys' fees and to release and waive all errors that may intervene and to consent to immediate execution thereon.

THIS INSTRUMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICT OF LAW. THE UNDERSIGNED CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF ANY LOCAL, STATE, OR FEDERAL COURT LOCATED WITHIN SAN ANTONIO, TEXAS FOR ALL PURPOSES IN CONNECTION WITH THIS GUARANTY. THE UNDERSIGNED WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED ON THIS GUARANTY.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Guaranty as of this _____ day of JUNE _____, 2006 .

_____
JOHN T. PORTEMONT, Individually

_____
THERESA PORTEMONT, Individually

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAGUAR PREMIUM FINANCE CORP., a Texas corporation ) ) ) Plaintiff, ) ) v. ) ) ALL-AMERICAN SHOWS, INC., an Alabama ) Corporation; JOHN T. ("TERRY") ) PORTEMONT, an individual; and THERESA ) PORTEMONT, an individual; ) ) Defendants. ) | CIVIL ACTION NO. 2:07cv1004-MEF |

STATE OF ALABAMA   )
                   )
COUNTY OF COFFEE   )

## AFFIDAVIT OF ANNE STONE SUMBLIN

Before me, the undersigned authority, personally appeared Anne Stone Sumblin, who first being duly sworn, deposes and says as follows:

1.  My name is Anne Stone Sumblin and I am an attorney licensed to practice law in the State of Alabama. I am a partner in the firm of Walston Wells & Birchall, LLP ("Walston, Wells"), and I am authorized to execute this affidavit on its behalf. This affidavit is given on the basis of my personal knowledge and my review of the records of Walston, Wells.

2.  At the request of Jaguar Premium Finance Corporation ("Jaguar Premium"), we provided professional services since November 2007 in connection with Jaguar Premium's collection of debt owed to it by the defendants named in the above-styled action.

3.  The services provided Jaguar Premium since November 2007 have included the following:

**EXHIBIT B - TO MOTION FOR SUMMARY JUDGMENT**

consulting with Jaguar Premium officers; reviewing Jaguar Premium documents and records; corresponding with representatives of Jaguar Premium and counsel for defendants and others; researching legal issues; drafting the complaint, Rule 26 documents, this motion, and affidavits.

Through February 2008, a total of $7,488.00 in attorney's fees has been incurred in connection with the collection of the debt and the enforcement of the terms of the loan and guaranty documents made the subject of this action. This amount consists of time devoted to this case by Anne Stone Sumblin (41.60 hours at $195/hr) through February 2008. In my opinion, the services, and the fees incurred for these services, were reasonable, necessary, and authorized.

4. In addition, Walston, Wells has incurred $484.04 in expenses in connection with this matter through February 2008. These expenses include charges for photocopies, postage, long distance, facsimile, mileage, filing fees, computer research, and related expenses.

5. It is estimated that additional fees in the approximate amount of $585.00 will be incurred in March 2008 in connection with the filing and prosecution of the motion for summary judgment.

_____
Anne Stone Sumblin

SWORN TO AND SUBSCRIBED
Before me this the 4th day of
March, 2008.

_____
Notary Public
My Commission Expires: 5/16/09

2